UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEANETTE BRANNON, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 4:05CV01713 ERW |
| LUCO MOP COMPANY, | ) |
| Defendant(s). | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment [doc. #29] and Plaintiff's Motion to Strike Defendant's Statement of Uncontroverted Material Facts and/or Summarily Deny Defendant's Motion for Summary Judgment [doc. #33].

## **I. PROCEDURAL HISTORY**

Plaintiff Jeannette Brannon (Plaintiff) filed suit against Defendant Luco Mop Company (Defendant), alleging discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12102 *et seq.*, and the Rehabilitation act of 1973.[1] The Defendant denies that the Plaintiff is entitled to relief under either of these statutes. The parties participated in Alternative Dispute Resolution, however, no settlement was reached. Following the failure of ADR, the Defendants filed the present Motion for Summary Judgment. To which the Plaintiff's responded, and also filed a motion to strike. Both of these motions are currently before the Court.

## **II. FACTUAL BACKGROUND**

---

[1]Although the Plaintiff's complaint alleges violations of the Rehabilitation Act of 1973, there is no mention of that violation in Plaintiff's response to Defendant's Motion for Summary Judgment, therefore the Court will only briefly address the question.

1

Plaintiff was employed by the Defendant in the position of packer, from approximately June 19, 2000, until she was terminated on April 26, 2005. In this position she was responsible for packing broom heads into boxes and stacking the boxes onto a pallet.[2] The position of packer required the Plaintiff to stand for two to three hours at a time, as the job of packer could only be performed from a standing position. The Plaintiff suffered from diabetes throughout her employment with the Defendant, and because of her diabetes she was required to miss work on a number of occasions in order to have surgery on her feet. During 2004 and the beginning of 2005 the Plaintiff's level of production began to decrease and she was counseled in July, 2004, and again in January, 2005, that her level of production was unacceptable. Despite these warnings, Plaintiff's production levels continued to be below expected levels. On March 8, 2005, after getting a splinter in her toe at work, the Plaintiff was required to have surgery on her foot because of an infection that had developed from the splinter. When she did not return to work for over a month, the Defendant terminated the Plaintiff. The President of Luco Mop Company, John Shalhoub, testified that the Plaintiff was terminated because of her inadequate production level, her failure to inform the company when she would be absent, and her excessive absences with notification.

### III. MOTION TO STRIKE

The Federal Rules provide that

> upon motion made by a party before responding to a pleading, or if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter.

---

[2] A more complete description of the job of packer is unnecessary for the Court's discussion.

Fed. R. Civ. P. 12(f). The Plaintiff moves this Court to strike both Defendant's statement of Uncontroverted Material Facts, as well as John Shalhoub's affidavit which was submitted in support of Defendant's Motion for Summary Judgment. Plaintiff's motion requires only a brief response, as Rule 12(f) by its terms, applies only to pleadings, not to motions for summary judgment, or the documents filed in support of a motion for summary judgment. *Burlington Northern Santa Fe Railway Corp. v. Dakota Missouri Valley and Western Railroad, Inc.*, 347 F.Supp.2d 708, 727 (Dist. S.D. 2004) ("Courts have consistently held that the various papers submitted in support of or in opposition to summary judgment motions are not pleadings as contemplated by Rule 12(f)). A pleading is defined in the Federal Rules as "a complaint and an answer; a reply to a counterclaim. . .; an answer to a cross claim. . .; a third-party complaint. . .; and a third party answer. . .. No other pleading shall be allowed. . .." Fed. R. Civ. P. 7(a). As a District of Columbia court held, "[t]hus, by the plain terms. . .the rule cannot be used to strike an affidavit." *Aftergood v. central Intelligence Agency*, 355 F.Supp.2d 557, 564 (Dist. D.C. 2005).

Plaintiff also seeks to strike the Defendant's statement of uncontroverted facts. Plaintiff argues that the Defendant's failure to reference specific line numbers of deposition testimony, and the failure to state that each fact is established by the record violates Local Rule 4.01(E). While the failure of the Defendant to include specific line numbers may require a more thorough review of the deposition testimony, it does not violate Rule 4.01(E), which states that a citation shall be given when a fact is established by the record; it does not specify the form of the citation. Local Rule 4.01(E). Nor does the rule require that each fact be supported by a citation. The appropriate means of opposing a movant's statement of uncontroverted facts is "to include a statement of material facts as to which the party contends a genuine issue exists." *Id.* The Court will consider Plaintiff's Statement of Material Facts, and will view all facts in a light most

3

favorable to the Plaintiff in ruling on Defendant's Motion for Summary Judgment, however, this Court will not strike Defendant's statement of facts nor will it strike John Sholhoub's affidavit.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in

4

its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

### B. DISCUSSION

#### 1. The Rehabilitation Act

As an initial matter the Court notes that the Plaintiff alleged a violation of the Rehabilitation Act. The Defendant argues that the Plaintiff has offered no evidence that the Defendant is a federal contractor or a recipient of federal financial assistance, and therefore cannot be liable under the Rehabilitation Act. The Plaintiff does not address this argument in his memorandum in opposition. The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability. . .shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In the present case the Plaintiff has failed to allege any facts that the Defendant, a private company, receives any Federal financial assistance or participates in any federally funded programs. Therefore, the Defendant's Motion for Summary Judgment, as to Plaintiff's claim under the Rehabilitation Act, is granted.

2. **American with Disabilities Act**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability. . .." 42 U.S.C. § 12112(a). "Discrimination includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability[,] unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Dropinski v. Douglas County, Nebraska*, 298 F.3d 704, 707 (8th Cir. 2002) (internal citation and alteration omitted). In analyzing a claim under the ADA, the burden shifting analysis articulated in *McDonnell Douglass Corp. v. Green*, is used. 411 U.S. 792 (1973); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 959 (8th Cir. 2000) ("[D]iscrimination claims are analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp. . ..*"). First, the Plaintiff must establish a prima facie case of discrimination, then the burden shifts to the employer to articulate a nondiscriminatory reason for terminating the Plaintiff, and if it succeeds then the burden shifts back to the Plaintiff to show that the reason put forth is pretextual. *Taylor*, 214 F.3d at 959. The Court will use this approach in determining whether there is a genuine issue of material fact sufficient for Plaintiff to survive Defendant's motion for summary judgment. In ruling on a motion for summary judgment in a discrimination case, the Court is mindful that summary judgment should seldom be used in this context. *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000)

("Summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." (Internal citation omitted)).

### a. Disability

In order to present a prima facie case under the ADA, the Plaintiff must show that (1) she is disabled within the meaning of the ADA, (2) that she was qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) that she was terminated because of her disability. *Taylor*, 214 F.3d at 959-960; *see also Dropinski*, 298 F.3d at 706. The Plaintiff claims that she is disabled because of her diabetes, and that she was qualified to perform the job with a reasonable accommodation, namely being allowed to sit for short periods of time when needed and being allowed short periods of absence, and that she was terminated because of her diabetes. The Court will address each requirement of a prima facie case in turn.

First, Plaintiff must show that she has a disability within the meaning of the ADA. *Taylor*, 214 F.3d at 959-960. A disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2)(A)-(C). The Plaintiff claims to suffer from the physical impairment of diabetes, which she further testified effects her ability to walk, stand, sleep and eat. A physical or mental impairment is defined by the regulations as "any physiological disorder, or condition" affecting one of the major body systems." 29 C.F.R. § 1630.2(h). This Court does not question that diabetes is a physical impairment. To qualify as a disability the physical impairment must substantially limit a major life activity. Such limitation is to be determined on a case by case basis; a medical diagnosis of an impairment is not automatically sufficient. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002) ("Merely having an impairment does not

make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity."); *see also Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee*, 370 F.3d 763, 769 (8th Cir. 2004) ("[T]he existence of a disability is to be determined in a case-by-case manner," requiring "an individualized assessment of the effect of an impairment.").

The Regulations define major life activity as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2.(i). This is a non-exhaustive list that is intended to be illustrative of a major life activity. *See Bragdon v. Abbott*, 524 U.S. 624 (1998) ("As the use of the term 'such as' confirms, the list is illustrative, not exhaustive."). The EEOC's interpretations of the ADA define a major life activity as "those basic activities that the average person in the general population can perform with little or no difficultly." *Walsted*, *Woodbury County, IA*, 113 F.Supp.2d 1318, 1328 (N.D. Iowa, 2000). The Plaintiff asserts, and the Defendant does not challenge, that walking, standing, sleeping, and eating are major life activities. The Court agrees that these are basic activities that the average person can perform with little or no difficulty.

The Plaintiff must then provide evidence that she is substantially limited in these major life activities. 42 U.S.C. § 12102(2)(A). As the Eighth Circuit has held, "most disabilities from which people suffer, including diabetes, do not have a substantial enough effect on their major life activities." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir. 2002) (internal citations omitted). Whether a physical impairment substantially limits a major life activity is a "demanding standard" that requires a showing that the Plaintiff's ability to perform the activity is limited to a "considerable or large degree as compared to the average person in the general population." *Id.* In determining whether an activity is substantially limiting the court will look at: "(I) the nature

8

and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The Plaintiff provided conflicting testimony regarding the effect of diabetes on her activities. The Defendant argues that the evidence elicited during the Plaintiff's deposition, along with testimony from her boyfriend, supports a finding that the Plaintiff was not substantially limited, but rather only moderately limited in the major life activities of walking, standing, sleeping, and eating. The Plaintiff responds that the Plaintiff provided sufficient evidence that she was substantially limited in all of the above activities, and that the cases cited by the Defendant are distinguishable. The Court will address each activity to determine whether sufficient evidence has been provided to support a finding that there is a genuine issue of material fact as to whether the Plaintiff was disabled.[3]

The Plaintiff first contends that her diabetes substantially limited the major life activity of walking. The Plaintiff testified that she could only walk a few blocks before needing to stop and take a fifteen to twenty minute break, to allow the feeling to return to her feet; she could not walk a mile. The Eighth Circuit in *Wood v. Crown Redi-Mix, Inc.*, held that the plaintiff was not substantially limited in walking as he could walk a quarter of a mile before needing to take a break, and he was not required to use a handicap parking pass; rather the plaintiff only had a moderate limitation. 339 F.3d 682, 685 (8th Cir. 1999). The Plaintiff must show that she can only walk for very brief periods of time. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3rd

---

[3]There is some conflict between the parties as to whether the portions of the Plaintiff's testimony relate to her current condition, or her condition at the time she was discharged. The Court notes that for purposes of a disability claim under the ADA, the question is whether the Plaintiff was disabled at the time of the adverse employment action. *See e.g. Samuels v. Kansas Ciy Missouri School Dist.*, 437 F.3d 797, 802 (8th Cir. 2006). To the extent that the Plaintiff's testimony can be related to the specific period of time when the Plaintiff was working for the Defendant, the Court will look to her condition at that time.

9

Cir. 1999). The limitation must be severe. *Toyota*, 534 U.S. at 198 ("We therefore hold that to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or *severely* restricts the individual from doing activities that are of central importance to most people's daily lives."). The Plaintiff cites the Court to a seventh circuit decision in which the court held a reasonable jury could find the plaintiff was substantially limited in walking when she was unable to walk, without difficulty, from her car to her work station at a department store. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005). The Plaintiff's testimony is that she has trouble walking more than a few blocks, and that such impairment is long-term. Making all inferences in favor of the Plaintiff the Court believes that there is a genuine issue of fact regarding whether the Plaintiff is substantially limited in the major life activity of walking.

The Plaintiff also contends that she is substantially limited in the major life activity of standing. The Plaintiff testified that after an hour of standing she needs a sit for ten to fifteen minutes, however, she also testified in her deposition that if she pushed herself she could stand for whatever period was necessary. In a Third Circuit opinion the court found that a person who needed to sit after standing for fifty minutes, was not substantially limited in the activity of standing. *Taylor*, 177 F.3d at 186. Looking at the Plaintiff's impairment at the time of her termination, the Plaintiff was not substantially limited in the activity of standing as she could stand for two hours if needed.

Next, the Plaintiff contends that she is substantially limited in the major life activity of sleeping. The only testimony regarding her limitation on sleeping is that she wakes up somewhere between ten and twenty times every night for somewhere between fifteen and thirty minutes. The Plaintiff's boyfriend testified that she slept between eight and ten hours every night. Assuming that the Plaintiff was awake ten times for half an hour each time, for a total of five hours, this

10

would still allow her to sleep three to five hours per night. The Eighth Circuit in *Nuzum v. Ozark Automotive Distributors*, held that the plaintiff was not substantially limited in the activity of sleeping when his sleep was limited to two and a half hours at a time for a total of four to five hours per night. 432 F.3d 839, 848 (8th Cir. 2005). The Defendant also cites to a Sixth Circuit decision which held that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Boerst v. General Mills Operations, Inc.*, 25 Fed.Appx. 403, 407 (6th Cir. 2002). Furthermore, the Plaintiff testified that when taking her medication she was not in pain when she would awake. Although the Court is sympathetic to the Plaintiff's illness, this kind of limitation is not sufficient to find that the Plaintiff was substantially limited in the activity of sleeping.

Lastly, the Plaintiff alleges she is substantially limited in the major life activity of eating. This issue is easily addressed as the Plaintiff's own testimony clearly does not support such a finding. The Plaintiff testified that she can eat all foods, but can only eat sugary food and soda in limited quantities. In *Weber v. Strippit, Inc.*, the Eighth Circuit found that dietary restrictions were not sufficient to constitute a substantial limitation under the ADA, but rather were only moderate limitations. 186 F.3d 907, 914 (8th Cir. 1999).

### b. Reasonable Accommodation

As the Court finds that there is sufficient evidence to support a jury finding that the Plaintiff is disabled under 42 U.S.C. § 12102(2)(A), the Court will not address the Plaintiff's alternate arguments that there was a record of the Plaintiff having such an impairment, or that the Plaintiff was regarded as having such an impairment. Once the Plaintiff has provided evidence of a disability, she must then present sufficient evidence that she was qualified to perform the essential functions of her job, with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Taylor*, 214 F.3d at 959-960. The ADA defines a qualified individual with a disability to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In the case at bar, the Plaintiff argues that she was able to do her job with reasonable accommodations and that the Defendant failed to provide those accommodations. The Defendant argues that the Plaintiff was unable to perform the essential functions of the position because of her unreliable attendance, and her inability to meet expected production levels. Furthermore, the Defendant contends that the Plaintiff never requested accommodation and therefore the Defendant cannot be responsible for failing to provide it.

> The Eighth Circuit has broken the inquiry into two prongs:
>
> [f]irst, a court must determine whether the individual satisfies the requisite skill, experience, education and other job related requirements of the employment position that such individual holds or desires[,] [s]econd, it must determine whether the individual, *with or without reasonable accommodation*, can perform the essential functions of the position held or sought.

*Weber v. Strippit, Inc.*, 186 F.3d 907, 916 (8th Cir. 1999) (internal citation omitted) (emphasis in original); *see also Land v. Washington County, Minnesota*, 243 F.3d 1093, 1095 (8th Cir. 2001) ("The determination of qualification involves a two-fold inquiry. . .."). The Plaintiff has satisfied

the first prong of the inquiry laid out above. She worked for the Defendant as a packer for five years prior to being terminated, which was a job for which no prior skill or training was required. The second prong, requires a showing that she was able to perform the essential functions of the job. *Id.* John Shalhoub, testified that the Plaintiff was absent from work for an excessive number of days, and that when she was present her production level was approximately fifty percent of what was expected for a person in her position. As a result of the Plaintiff's low production and high absenteeism, the Defendant would often have to take an employee from another position in the plant to aid the Plaintiff with her job, thus reducing the overall productivity of the company.[4] The Plaintiff argues that because the Defendant had no written attendance policy, this was not an essential function of the job. The Plaintiff further argues that there is a question of fact regarding the Plaintiff's poor production because of a lack of a written record.

In determining whether the Plaintiff was able to perform the essential functions of the job, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential. . .." Therefore this Court shall give credence to John Shalhoub's testimony, regardless of the lack of a written policy. John Shalhoub testified that the Plaintiff's low level of production required him to move employees from other areas of the plant to assist her in packing, and that she only packed approximately half the number of boxes than what was expected. Both his testimony, and the testimony of the Plaintiff, states that the Plaintiff was required to pack at least fifty boxes, and that she routinely only packed half that number. The Plaintiff also testified that she was spoken to on at least two occasions because she was slowing down. Without any accommodation, the undisputed testimony is that the Plaintiff was not able to

---

[4]The Plaintiff was the only person employed in the position of Packer, and the plant only employed a total of thirteen production employees.

pack the number of boxes that was required for the position of packer. Additionally, both John Shalhoub and the Plaintiff testified that the Plaintiff missed several weeks of work for surgery on her foot on three different occasions, and that the last time it was uncertain when the Plaintiff would be able to return to work after being gone for over a month. Specifically, the Plaintiff missed forty of the seventy seven work days proceeding her termination. The Eighth Circuit has held in numerous cases that "attendance at work is a necessary job function" and "an employee who is unable to come to work on a regular basis is unable to satisfy any of the functions of the job in question, much less the essential ones." *Nesser v. Trans World Airlines Inc.*, 160 F.3d 442, 445 (8th Cir. 1998) (internal citation omitted). The evidence provided clearly suggests that without accommodation, the Plaintiff could not perform the essential functions of the job.

However, the Plaintiff argues that she could have performed the essential functions with reasonable accommodation. The burden is initially on the Plaintiff to show that a reasonable accommodation would have allowed the employee to perform the essential functions of the job, and once a facial showing has been made the burden then shifts to the Defendant to prove that such accommodation was not possible. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951 (8th Cir. 1999); *see also Land*, 243 F.3d at 1096 ("[T]he burden is on [the plaintiff] to show that, with a particular accommodation, he would have been qualified to perform the essential functions of the job."). The Plaintiff suggests two accommodations that the Defendant should have made: first, allowing the Plaintiff to sit for short periods of time if she had balance problems or pain in her legs, and second, to allow short periods of absence to recover from the surgical removal of her toe. Although the Plaintiff cites to the obligation the Defendant had to engage in an interactive process to determine whether an accommodation is possible, the failure to engage in such a process does not make the defendant liable per se. *Alexander v. Northland Inn*, 321 F.3d

14

723, 728 (8th Cir. 2003) ("there is no per se liability if an employer fails to engage in an interactive process"). The case law is also clear that the employer is not required to reallocate essential functions of a position that a qualified individual must perform. *Id.* In this case the Plaintiff requested to be allowed to sit for short periods of time, however, the Plaintiff has failed to provide evidence that this would have improved her productivity significantly, or prevented her from having to take extended leaves of absence. Furthermore, both the Plaintiff and the Defendant testified that the job could not be performed from a sitting position. Therefore, it was not reasonable to require the Defendant to allow the Plaintiff to sit for short periods of time. The outcome is the same regardless of whether or not the Defendant engaged in the interactive process, as the Plaintiff alleges they failed to do.[5] Secondly, an employer is not required to cover essential functions with another employee. *Alexander*, 321 F.3d at 728. The Plaintiff's extended absences required the Defendant to cover her position with another employee, thereby reducing productivity. This Court finds that the Plaintiff has failed in its burden to provide evidence of a reasonable accommodation that would have allowed the Plaintiff to perform the essential functions of the position, and therefore the Plaintiff cannot satisfy its prima facie case.

Even were it possible for a reasonable accommodation to have been made, so that the Plaintiff could have performed the essential functions of her job, which this Court concluded it is not, the Plaintiff has provided insufficient evidence to present a material issue of fact that she was terminated because of her disability. *Taylor*, 214 F.3d at 959-960. The undisputed testimony by

---

[5]The Court notes that the Plaintiff testified that she asked her immediate supervisor if she could sit if needed, however, she did not ask John Shalhoub, or anyone else in the main office, about a need for an accommodation. For purposes of this motion, the Court assumes that John Shalhoub was aware of the need for an accommodation, although this is not established in the record.

John Shalhoub is that he terminated the Plaintiff because of poor performance and her excessive absenteeism, both with and without documentation.

## V. CONCLUSION

The Plaintiff has failed to establish a prima facie case of discrimination under the ADA sufficient to survive a motion for summary judgment. The Court is cognizant of the high standard for granting summary judgment in a disability discrimination case, however, that standard has been met in this case. The Court's review of the evidence shows that the Defendant was patient with the Plaintiff in allowing her to be absent from work on numerous occasions, and giving her several warnings regarding her level of production. An employer is not required to endure hardship as a result of accommodating an employees disability. The Defendant's summary judgment motion is therefore granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #29] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike [doc. #33] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Hearing re Motion to Strike [doc. #35] is **DENIED as moot**.

Dated this 18th Day of January, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE